■ AMOS MARVEL, Respondent, v COUNTY OF ERIE, Appellant. (Appeal No. 1.) [762 NYS2d 332] —Appeal from an order of Supreme Court, Erie County (Kloch, Sr., J.), entered April 22, 2002, which denied defendant's motion to set aside a jury verdict.

■ AMOS MARVEL, Respondent, v COUNTY OF ERIE, Appellant. (Appeal No. 2.) [762 NYS2d 753] —Appeal from a judgment of Supreme Court, Erie County (Kloch, Sr., J.), entered May 9, 2002, which apportioned liability between the parties upon a jury verdict.

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously affirmed without costs.

Memorandum: Plaintiff commenced this action seeking damages for injuries that he sustained when he jumped from a balcony at the Erie County Medical Center (ECMC) on July 17, 1997. Following a bifurcated trial on the issue of liability, the jury apportioned fault 65% to defendant for, inter alia, deviating from the standard of care in the medical community by failing to provide constant supervision for plaintiff. Supreme Court denied defendant's motion to set aside the verdict as against the weight of the evidence, and defendant appeals from the judgment on liability.

According to the evidence presented at trial, plaintiff was in-

voluntarily committed to ECMC pursuant to Mental Hygiene Law § 9.41, which provides for emergency care of "any person who appears to be mentally ill and is conducting himself or herself in a manner which is likely to result in serious harm to the person or others." Upon arriving at the emergency department of ECMC, a nurse assessed him and placed him in wrist restraints until he could be seen by a physician. The nurse elected to apply the restraints without a physician's order because plaintiff was committed involuntarily, appeared intoxicated and was threatening to leave. Although the nurse testified that she was aware of the hospital's restraints policy, which provided that a patient placed in restraints shall be kept under constant supervision until the arrival of a physician, she conceded that plaintiff was not continually kept in view of the hospital staff before the physician arrived to examine him. The nurse testified that "constant supervision" does not require "one-on-one supervision," but requires only that the patient must "be in eyesight." Moreover, the nurse further conceded that, contrary to the hospital's restraints policy, she did not immediately summon a physician. Additionally, the policy provides that a patient's restraints should be checked every 30 minutes and that an assessment of the patient's condition be made at least once every 15 minutes and recorded. The nurse testified that plaintiff's chart did not indicate that such procedure was followed.

The ECMC Standards Manual policy on restraints is patterned after Mental Hygiene Law § 33.04, which provides in relevant part:

"(e) If an emergency situation exists in which the patient is engaging in activity that presents an immediate danger to himself or others and a physician is not immediately available, restraint may be effected only to the extent necessary to prevent the patient from injuring himself or others at the direction of the senior member of the staff who is present. The senior staff member shall cause a physician to be immediately summoned and shall record the time of the call and the person contacted. Pending the arrival of a physician, the patient shall be kept under constant supervision. If a physician does not arrive within thirty minutes of being summoned, the senior staff member shall record any such delay in the patient's clinical record and also place into the patient's clinical record a written description of the facts justifying the emergency restraint which shall specify the nature of the restraint and any conditions for maintaining the restraint until the arrival of a physician, the reasons why less restrictive forms of restraint were

not used, and a description of the steps taken to assure that the patient's needs, comfort and safety were properly cared for. Such physician shall place in the clinical record an explanation for any such delay.

"(f) During the time that a patient is in restraint, he shall be monitored to see that his physical needs, comfort, and safety are properly cared for. An assessment of the patient's condition shall be made at least once every thirty minutes or at more frequent intervals as directed by a physician. The assessment shall be recorded and placed in the patient's file. A patient in restraint shall be released from restraint at least every two hours, except when asleep. If at any time a patient upon being released from restraint makes no overt gestures that would threaten serious harm or injury to himself or others, restraints shall not be reimposed and a physician shall be immediately notified. Restraint shall not be reimposed in such situation unless in the physician's professional judgment release would be harmful to the patient or others."

The term "constant supervision" is not defined in either Mental Hygiene Law § 33.04 (e) or ECMC's Standards Manual, and thus the meaning of that term was in dispute at trial.

Plaintiff was eventually seen by a resident, who testified that he did not believe that he had ever reviewed ECMC's Standards Manual and that he was generally unaware of the hospital's restraints policy. Additionally, the resident testified that he did not check plaintiff's restraints during the 5 to 10 minutes that he was with plaintiff. Approximately 5 to 15 minutes after the resident left plaintiff's room, plaintiff freed himself from his restraints, ran through the hospital, hung off the balcony and fell more than 20 feet to the ground below.

Defendant contends, inter alia, that plaintiff was "constantly supervised while he was in the Emergency Room at ECMC" as a matter of law and thus the verdict is against the weight of the evidence to the extent that the jury responded in the affirmative to the question on the verdict sheet asking whether ECMC deviated from the standard of care in the medical community by failing to provide constant supervision for plaintiff. We disagree.

As this Court wrote in *Mochen v State of New York* (57 AD2d 719, 720 [1977]), "While it is clear that the State has a duty to take every precaution to protect its hospital patients from injury, self-inflicted or otherwise, and the degree of such care is measured by the patients' physical and mental illness as known to the hospital officials and employees, it is not an insurer of their safety and there is no requirement that their

activities be monitored 24 hours per day * * *." There is, however, a duty to provide constant supervision for a patient being held in restraints in an emergency situation, as set forth in both Mental Hygiene Law § 33.04 (e) and ECMC's Standards Manual. As the court properly determined in denying defendant's motion to set aside the verdict, the jury's finding that ECMC failed to provide constant supervision is not against the weight of the evidence (*see generally Dannick v County of Onondaga,* 191 AD2d 963, 964 [1993]). Plaintiff was involuntarily committed because he was believed to be a danger to himself or others. ECMC had information available to it that plaintiff was suffering from depression, was under psychiatric treatment, had been drinking and was violent and uncontrollable. Moreover, plaintiff's expert testified that plaintiff should not have been left alone at any time when it was determined that he required restraints. Indeed, defendant does not dispute that restraints were required and, instead, contends only that the requisite constant supervision was provided. Contrary to defendant's contention, the jury was entitled to find that the requisite supervision was not provided, based on the testimony of the nurse that plaintiff was not continually kept in view of the hospital staff before the physician arrived to examine him and based on the undisputed evidence that plaintiff was left alone for a period of time long enough to enable him to free himself from his restraints, run through the hospital, hang from a balcony and fall to the ground. Present—Pigott, Jr., P.J., Pine, Hurlbutt, Burns and Lawton, JJ.